UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LAINEZ,<br><br>    Plaintiff,<br><br>v.<br><br>WILHELM, LLC,<br><br>    Defendant. | Case No. 4:23-cv-04421-KAW<br><br>**ORDER DENYING MOTION TO REMAND; ORDER GRANTING MOTION TO COMPEL ARBITRATION; ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 18, 31, 34 |

Defendant Wilhelm, LLC removed this case to federal court on August 25, 2023. On December 11, 2023, Plaintiff Jose Lainez filed a motion to remand on the grounds that the Court lacked subject matter jurisdiction. (Pl.'s Remand Mot., Dkt. No. 18). On February 15, 2024, Defendant filed a motion for judgment on the pleadings (Def.'s J. Mot., Dkt. No. 31) and a motion to compel arbitration. (Def.'s Arbitration Mot., Dkt. No. 34.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Plaintiff's motion to remand, GRANTS Defendant's motion to compel arbitration, and DENIES Defendant's motion for judgment on the pleadings without prejudice.

## I. BACKGROUND

### A. Factual Background

Defendant provides tree and debris removal services with locations in Petaluma, CA and Oroville, CA. Plaintiff worked as a machine operator and driver. (First Am. Compl., "FAC," Dkt. No. 1 at 35 ¶ 10.)

On March 24, 2021, Plaintiff Jose Lainez, on behalf of himself and others similarly

1  situated and the general public, filed a class action complaint in Sonoma County Superior Court.
2  (Not. of Removal., Dkt. No. 1 ¶ 1.)  On December 9, 2021, Plaintiff file an amended complaint
3  ("FAC") via which he dismissed all class claims, leaving in controversy only the claims for PAGA
4  civil penalties. (Not. of Removal ¶ 2.)  Therein, Plaintiff alleges that he and all other aggrieved
5  employees were not paid for all hours worked, including overtime hours worked, due to pre- and
6  post shift off-the-clock work, including but were not limited to gathering tools and materials,
7  cleaning the job site, filling out forms, receiving work instruction, and putting on personal
8  protective equipment ("PPE"). (FAC ¶ 11.)  Instead, Defendant only paid for scheduled shifts, not
9  actual hours worked. *Id.*  Plaintiff further alleges that employees were denied adequate meal and
10 rest periods, that Defendant failed to issue accurate, itemized wage statements, and that former
11 employees were owed waiting time penalties because they were not paid all monetary
12 compensation owed at the time of separation. (FAC ¶¶ 14, 17-19.)  Wilhelm answered the FAC on
13 March 22, 2022. (Not. of Removal ¶ 3, Ex. C.)
14       Defendant contends that, "[t]throughout his pleadings, Plaintiff omitted the fact that he was
15 a member of a union and whose employment was governed by a collective bargaining agreement
16 ("CBA") since January 1, 2020, and then onward until his separation from Wilhelm on July 13,
17 2020." (Not. of Removal ¶ 5.)  On July 26, 2023, in the process of gathering information requested
18 by Plaintiff, Defendant identified facts suggesting that Plaintiff was a member of a union. (Notice
19 of Removal ¶ 6.)  Thereafter, Wilhelm conducted an investigation to confirm Plaintiff's union
20 affiliation and the date on which Plaintiff was inducted to a union. *Id.*  On August 25, 2023,
21 Wilhelm confirmed that Plaintiff was a unionized member of the Local Union 1245 of the
22 International Brotherhood of Electrical Workers, AFL-CIO since January 1, 2020. (Not. of
23 Removal ¶ 7; *see* Collective Bargaining Agreement, "CBA," Not. of Removal, Ex. D.)  On August
24 25, 2023, within 30 days of this discovery, Defendant removed this case to federal court. (*See*
25 *generally* Not. of Removal.)

26       **B.    Procedural Background**
27            **i.    Motion to Remand**
28       On December 11, 2023, Plaintiff filed a motion to remand. (Pl.'s Remand Mot., Dkt. No.

18.) On December 26, 2023, Defendant filed an opposition. (Def.'s Remand Opp'n, Dkt. No. 20.) On January 2, 2024, Plaintiff filed a reply. (Pl.'s Remand Reply, Dkt. No. 22.)

### ii. Motion to Compel Arbitration

On February 15, 2024, Defendant filed a motion to compel arbitration. (Def.'s MTCA Mot., Dkt. No. 34.) On February 29, 2024, Plaintiff filed an opposition. (Pl.'s MTCA Opp'n, Dkt. No. 40.) On March 7, 2024, Defendant filed a reply. (Def.'s MTCA Reply, Dkt. No. 45.)

### iii. Motion for Judgment on the Pleadings

On February 15, 2024, Defendant filed a motion for judgment on the pleadings. (Dkt. Nos. 31-33.) On February 29, 2024, Plaintiff filed an opposition. (Dkt. No. 39.) On March 7, 2024, Defendant filed a reply. (Dkt. No. 43.)

## II.   LEGAL STANDARDS

### A.   Motion to Remand

"The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quotations and citations omitted). Federal courts must "reject federal jurisdiction if there is any doubt as to the right of removal in the first instance." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 550 (9th Cir. 2018) (quotations and citations omitted).

The "well-pleaded complaint rule" provides "federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A corollary to the well-pleaded complaint rule is the 'complete preemption' doctrine, which applies in cases in which 'the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting Caterpillar, 482 U.S. at 393).

### B.   Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity

for the revocation of a contract." 9 U.S.C. §2. "Once the Court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 U.S. Dist. LEXIS 43531, at *8 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

### C. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings may be brought at any time "[a]fter the pleadings are closed," but "earlier enough not to delay trial." *See* Fed. R. Civ. P. 12(c). The standard applied to decide a Rule 12(c) motion is the same as the standard used in a Rule 12(b) motion to dismiss for failure to state a claim. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). "[J]udgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). In deciding the motion, a court may consider "(1) exhibits to the non-moving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *See Yang v. Dar Al-Handash Consultants*, 250 Fed. App'x 771, 772 (9th Cir. 2007). The court need not automatically accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### III.   DISCUSSION

The Court will address each of the pending motions below.

### A.   Motion to Remand

First, Plaintiff moves to remand this case to state court on the grounds that Defendant's removal was untimely, and, alternatively, that the claims are not preempted by the § 301 of the Labor Management Relations Act ("LMRA"), such that the Court lacks subject matter jurisdiction. (Pl.'s Remand Mot. at 1, 8.) The Court will address both arguments below.

//

4

### i. Removal was timely.

Plaintiff argues that the case was not timely removed from state court, because, on January 20, 2021, Defendant produced numerous documents from Plaintiff's personnel file that indicated his union affiliation, including his application for union membership, employee change, notice indicating a union wage increase, payroll deduction authorization, and a wage statement showing that union dues were paid. (Pl.'s Remand Mot. at 9; Decl. of Un Kei Wu, "Wu Decl.," Dkt. No. 18-1 ¶¶ 3, 5-8, Exs. A-D.)

In opposition, Defendant contends that the January 2021 document production is irrelevant, and that it timely removed the lawsuit because neither of the two 30-day periods for removal under 28 U.S.C. § 1446 apply. (Def.'s Remand Opp'n at 2-3, 6.) The fact that the FAC was not clearly removable on its face is undisputed. (*See* Pl.'s Remand Mot. at 9.)

28 U.S.C. § 1446(b) provides two 30-day periods for removal. The first is when the pleading is removable on its face. 28 U.S.C. § 1446(b)(1). The second is, when "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005) (discussion of two removal periods). "If neither of these requirements applies, the initial 30-day clock does not run –even where the removing party has possession of documents that provide grounds for preemption." *Galeano v. Am. etc., Inc.*, No. 16-CV-0033-PJH, 2016 WL 908093, at *2 (N.D. Cal. Mar. 10, 2016) (citing *Harris*, 425 F.3d at 695-97).

Here, it is undisputed that the basis for removal does not appear on the face of the initial or first amended complaints, and that there was no "other paper" filed or otherwise **presented by Plaintiff** in the state court case that provided a basis for removal. *See Galeano,* 2016 WL 908093, at *2 (emphasis added). Thus, Plaintiff's argument that Defendant has known, based on Defendant's production of the personnel file, that Plaintiff was a union member is unavailing because it ignores § 1446(b)(3)'s requirement that the plaintiff produce the document. Moreover, the Court notes that Defendant is permitted to file a notice of removal outside of the two

5

1    enumerated, 30-day periods based on its own information. *Roth v. CHA Hollywood Med. Ctr.,*
2    *L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). Indeed, as of March 30, 2022, and despite the prior
3    production of Plaintiff's personnel file, neither Plaintiff's counsel nor Defense counsel were aware
4    that Plaintiff was a member of a union. (3/30/22 Email, Decl. of Vincent R. Fisher, Dkt. No. 21 ¶
5    4, Ex. A.) Thus, the Court finds that Defendant's January 2021 document production did not
6    trigger a 30-day removal window, rendering removal timely.

           **ii.**     **LMRA preemption**

8    Defendant removed on the grounds that some of the predicate violations underlying
9    Plaintiff's PAGA claims are preempted by § 301 of the LMRA, which provides "[s]uits for
10   violation of contracts between an employer and a labor organization… may be brought in any
11   district court of the United States." Labor Management Relations Act, 1947, § 301(a), 29 U.S.C. §
12   185(a). "Although § 301 contains no express language of preemption, the Supreme Court has long
13   interpreted the LMRA as authorizing federal courts to create a uniform body of federal common
14   law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d
15   1146, 1151 (9th Cir. 2019) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)); *see
16   also Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). As a result, "a civil complaint
17   raising claims preempted by § 301 raises a federal question that can be removed to a federal
18   court." *Curtis*, 913 F.3d at 1152.

19   In *Burnside v. Kiewit Pacific Corp.*, the Ninth Circuit adopted a two-part test for analyzing
20   whether § 301 preempts a state law claim. 491 F.3d 1053, 1059 (9th Cir. 2007). Under the
21   *Burnside* test, courts first "ask whether the asserted cause of action involves a right [that] exists
22   solely as a result of the [Collective Bargaining Agreement]." *Curtis*, 913 F.3d at 1152 (quotation
23   marks and citations omitted). If the answer to the first question is yes, then "the claim is
24   preempted and [the] analysis ends there." *Id.* at 1152-53 (quoting *Burnside*, 491 F.3d at 1059). If
25   the answer to the first question is no, then courts "proceed to the second step and ask whether a
26   plaintiff's state law right is substantially dependent on analysis of" the collective bargaining
27   agreement. *Id.* (quotations and citations omitted). To answer this question, courts consider
28   "whether the claim cannot be resolved by simply look[ing] to versus interpreting the [Collective

6

Bargaining Agreement]." *Id.* (quotations and citations omitted).

### a. LMRA § 301 is a basis for removal.

As a threshold issue, Plaintiff contends that his PAGA claim is not preempted by the LMRA, because he makes no mention of the CBA in the FAC, and statutory exemptions are affirmative defenses that may not form the basis for LMRA preemption. (Pl.'s Remand Mot. at 6.) Essentially, Plaintiff argues that he can artfully plead his claims to avoid LMRA preemption by not mentioning the CBA. *See id.* Plaintiff is mistaken. In *Curtis,* the Ninth Circuit expressly found that § 301 was an exception to the general rule that "federal preemption is a defense that does not authorize removal to federal court, [because] § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis*, 913 F.3d at 1152 (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). "In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Curtis*, 913 F.3d at 1152 (citing *Metro. Life Ins.*, 481 U.S. at 65).

To the extent that Plaintiff argues that *Curtis* cannot be relied upon because it was decided in the context of a motion to dismiss, he is mistaken. (Pl.'s Remand Reply at 3-4.) Indeed, *Curtis* expressly states that removal is proper in this circumstance. *Curtis*, 913 F.3d at 1152

Finally, post-*Curtis,* a majority of courts in this circuit have found that an affirmative defense of § 301 is sufficient to raise a federal question that can be removed even absent mention of a CBA or a concession from the plaintiff that the CBA applied to them. *See, e.g., Jimenez v. Young's Mkt. Co., LLC*, No. 21-CV-02410-EMC, 2021 WL 5999082, at *7 (N.D. Cal. Dec. 20, 2021) (collecting cases).

Thus, the Court finds that a defense of § 301 raises a removable federal question.

### b. At least a portion of the PAGA claim is subject to preemption.

Next, the Court must determine whether the PAGA claim is subject to preemption. The Court notes that the operative complaint does not specifically identify which California Labor Code sections provide the basis for the PAGA claim. Instead, Plaintiff alleges that he seeks civil penalties in connection with Labor Code violations for unpaid wages, overtime compensation,

7

1  meal period premium pay, rest period premium pay, failure to furnish accurate, itemized wage

2  statements, and waiting time penalties. (*See* FAC ¶ 22.)  PAGA claims are derivative, so original

3  jurisdiction is determined by whether the LMRA preempts the predicate claims. *Chatman v.*

4  *WeDriveU, Inc.*, No. 3:22-CV-04849-WHO, 2022 WL 15654244, at *12 (N.D. Cal. Oct. 28, 2022)

5  (citing *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 748 (S.D. Cal. 2021)).

6      Here, Plaintiff worked for Defendant as both a non-unionized employee and as a unionized

7  employee, and he seeks to represent both groups of aggrieved employees in his PAGA claim.

8  (Pl.'s Remand Reply at 6; *see also* Not. of Removal ¶ 16.)  Plaintiff's PAGA claim includes

9  violations related to unpaid overtime compensation and meal periods, which are addressed in the

10  CBA. (CBA, Not. of Removal, Ex. D at § 3.1 (regular hours and meal periods), 3.3 (overtime), 3.8

11  (alternate work schedule permitting four, 10-hour days).)

12      1.   Overtime and meal breaks

13      California Labor Code § 510 addresses the right to overtime compensation for hours

14  worked in excess of eight hours per day or 40 hours per week. Cal. Lab. Code § 510(a).  California

15  Labor Code § 514, however, provides an exception for employees covered by collective

16  bargaining agreements, so long as the overtime premium is no less than 30% more than the state

17  minimum wage. Cal. Lab. Code § 514.  Plaintiff's CBA provides that all work performed outside

18  of regular hours be paid at double the regular straight-time rate of pay. (*See* CBA § 3.3.)  Thus, the

19  CBA provision for overtime pay satisfied § 514, such that § 510 does not apply to Plaintiff.

20      California Labor Code § 512 generally requires an employer to provide a 30-minute meal

21  break to an employee working more than five hours per day, and a second meal break must be

22  provided if an employee works more than 10 hours per day. Cal. Lab. Code § 512(a).  Subdivision

23  (a), however, does not apply to employees employed in a construction occupation or as a

24  commercial driver if they are (1) covered by collective bargaining agreements, and (2) the valid

25  CBA "provides for the wages, hours of work, and working conditions of employees, and expressly

26  provides for meal periods for those employees, final and binding arbitration of disputes

27  concerning application of its meal period provisions, premium wage rates for all overtime hours

28  worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum

United States District Court
Northern District of California

1    wage rate." Cal. Lab. Code § 512(e)(1)-(2).  Here, the CBA specifies that the regular working

2    hours are 7:00 a.m. to 3:30 p.m., and that the unpaid meal period of 30 minutes will normally be

3    taken from 12:00 noon to 12:30 p.m., but that it "may be advance[d] or delayed an hour or less

4    when work must necessarily be performed during the regular lunch period. Such a change in the

5    lunch period shall not be deemed to require the payment of overtime." (CBA § 3.1.)  Thus, the

6    CBA satisfies the exception set forth in § 512(e), such that § 512(a) does not apply to Plaintiff.

7    Since it is undisputed that Plaintiff is covered by the CBA, any right to overtime or meal

8    period wages exist solely because of the CBA, the portion of the PAGA claim related to these

9    claims are, therefore, preempted under § 301. *Chatman*, 2022 WL 15654244, at *9 (quoting

10   *Curtis*, 913 F.3d at 1154).

2. Other alleged violations

Beyond a single conclusory statement, Defendant does not explain how the remaining violations for rest periods, the requirement to furnish accurate itemized wage statements, and waiting time penalties are covered by the CBA, or which provisions of the CBA preempt these claims. (*See* Def.'s Remand Opp'n at 14.)  Indeed, Defendant only fully addresses overtime and meal periods. *See id.* at 12-13.  To the extent that the CBA does not cover all alleged violations, the PAGA claim would ultimately not be preempted concerning those underlying Labor Code violations. *See Chatman,* 2022 WL 15654244, at *12; *see also Sarmiento v. Sealy, Inc.,* 367 F. Supp. 3d 1131, 1146 (N.D. Cal. 2019) (derivative PAGA claim not entirely preempted with portion of non-preempted claim remanded to state court).  Since the sufficiency of the PAGA claim's pleading will not be addressed at this juncture, the fact that at least some of the claim is clearly preempted is sufficient to confer subject matter jurisdiction.[1]

Accordingly, the Court finds that the Court has subject matter jurisdiction under § 301, and the motion to remand is denied.

---

[1] The Court also notes that Plaintiff's employment consisted of being non-union and being a union member, and he seeks to represent both union and non-union aggrieved employees, which may complicate the scope of the preemption issue for the alleged overtime and meal period claims. (*See* Pl.'s Remand Reply at 6.)  This, however, is a question for the arbitrator. *See* discussion, *infra,* Part III.C.

### B. Motion to Compel Arbitration

Having denied the motion to remand, the Court will now address the motion to compel arbitration.

#### i. Operative Arbitration Agreement

On October 7, 2019, Plaintiff signed an arbitration agreement as part of his onboarding process. (Agreement, Decl. of Jon Baber, "Baber Decl.," Dkt. No. 34-2 ¶ 4, Ex. A; Decl. of Jose Lainez, "Lainez Decl.," Dkt. No. 40-1 ¶ 4.) The document was titled "Agreement to Arbitrate Disputes" and was two pages long. (*See* Agreement at 1.) The Agreement bound the parties to arbitration pursuant to the FAA. *Id.* The Agreement covered any dispute arising from, or relating to, Plaintiff's employment. *Id.* The Agreement provided for the selection of a neutral arbitrator to whom the parties mutually agree, it provided for reasonable discovery, and it required the arbitrator to issue a written award. *Id.* at 1-2. Finally, the Agreement did not contain any language limiting the scope of remedies available to Plaintiff, and it required Defendant to pay all fees and costs unique to arbitration. *Id.* at 2.

Plaintiff does not dispute that the arbitration agreement relates to a transaction involving interstate commerce, and is, therefore, governed by the FAA. Rather, he argues that the agreement is invalid on the grounds that it is unconscionable. (Pl.'s MTCA Opp'n at 2.)

Thus, the Court finds that the Agreement is governed by the FAA.

#### ii. Unconscionability

Courts apply state contract law to determine the enforceability of an arbitration agreement. *Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010). Under California law, "a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 89, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000)). These two prongs operate on a sliding scale: the lesser the procedural unconscionability, the greater substantive unconscionability must be shown, and vice versa. *Armendariz*, 24 Cal. 4th at 89, 99 Cal.Rptr.2d 745, 6 P.3d 669. If the Court determines that any contractual provisions are unconscionable, the Court must then decide whether the unconscionable provisions are severable

1   from the rest of the contract. *Armendariz*, 24 Cal. 4th at 121–122, 99 Cal.Rptr.2d 745, 6 P.3d 669.

2           a.   Procedural Unconscionability

3   "The procedural element of unconscionability focuses on oppression or surprise due to
4   unequal bargaining power." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017)
5   (internal quotation omitted).

6   Here, there can be no real dispute that there is at least some procedural unconscionability.
7   Plaintiff was required to sign the Agreement as a condition of his employment, making it a
8   contract of adhesion. (*See* Pl.'s MTCA Opp'n at 4; *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975,
9   981 (2010) (finding procedural unconscionability when an offer was presented on a take-it-or-
10  leave-it basis).)

11  Additionally, Plaintiff argues that "despite Defendant's representatives [having]
12  communicated with Plaintiff in Spanish, the arbitration agreement and other documents were
13  solely in English without providing Plaintiff any translation to Spanish." (Pl.'s MTCA Opp'n at 4
14  (Lainez Decl. ¶¶ 5-6).)  In support of his opposition, Plaintiff provides a sworn declaration that is
15  entirely in English without any indication of language translation, and merely states that Plaintiff
16  is "only fluent in Spanish." (Lainez Decl. ¶ 5.)  Nowhere does it address the extent of his English
17  proficiency.  Even so, Plaintiff executed an English-language declaration under penalty of perjury
18  without using court document translation protocols.  Thus, the Court must presume that Plaintiff is
19  proficient enough in English to understand and execute the detailed, sworn declaration.
20  Regardless, "[g]enerally, a party may not avoid enforcement of an arbitration provision because
21  the party has limited proficiency in the English language." *Caballero v. Premier Care Simi Valley*
22  *LLC*, 69 Cal. App. 5th 512, 518, 284 Cal. Rptr. 3d 560, 565 (2021). "If a party does not speak or
23  understand English sufficiently to comprehend a contract in English, it is incumbent upon the
24  party to have it read or explained to him or her." *Id.* at 518-19 (citing *Ramos v. Westlake Servs.*
25  *LLC*, 242 Cal. App. 4th 674, 687, 195 Cal. Rptr. 3d 34, 44 (2015)).  An exception to this general
26  rule is when a party was fraudulently induced to sign the contract. *Id.* at 519.  This exception,
27  however, is inapplicable because Plaintiff does not contend that Defendant defrauded him. *See id.*
28  He merely contends that he was not presented with the Agreement in Spanish or an explanation of

what he was agreeing to. (*See id.*; Pl.'s MTCA Opp'n at 4.) Ultimately, Plaintiff was responsible for informing Defendant that he did not understand the Agreement, and he does not cite to any legal authority that Defendant had an initial burden of assessing whether he understood the English version. *See Caballero,* 69 Cal. App. 5th at 519 (employer had no such burden). As it is incumbent on the individual with limited English proficiency to affirmatively seek out an explanation if he did not understand the Agreement, Plaintiff's "decision to sign a document he could not read is not a basis for avoiding an arbitration agreement." *See id.* (citing *Brookwood v. Bank of America* (1996) 45 Cal. App. 4th 1667, 1674 (1996) ("A party cannot use his own lack of diligence to avoid an arbitration agreement.").)

Thus, while Plaintiff's purported limited English proficiency does not give rise to any procedural unconscionability, the Court finds that the fact that he was required to sign the Agreement as part of the onboarding process confers some degree of procedural unconscionability, because it was adhesive.

### b. Substantive Unconscionability

The Court, however, finds that there is no substantive unconscionability because the arbitration agreement does not require the waiver of Plaintiff's representative PAGA claim. "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). Terms are unconscionable if they are "overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910-11 (2015) (internal quotations omitted). Thus, the court must look for terms that are "unreasonably favorable to the more powerful party." *Id.* at 911 (internal quotation omitted).

Here, Plaintiff argues that the arbitration agreement contains a representative PAGA waiver, which is inherently unconscionable. (Pl.'s MTCA Opp'n at 6.) Plaintiff is mistaken, because no such waiver exists. Indeed, the arbitration agreement merely states that "The parties also agree that, to the extent permitted by law, they will be precluded from asserting in arbitration, or any other forum, any representative claims otherwise permitted by law." (Agreement at 1.)

Since waivers of representative PAGA claims are not permitted by California law as a matter of public policy, no such right has been waived. *See Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1117, 532 P.3d 682, 688 (2023) ("categorical waiver of the right to bring a PAGA action is unenforceable"). Thus, there is no substantive unconscionability.

### iii. Case is stayed pending arbitration.

In light of the foregoing, Defendant's motion to compel arbitration of Plaintiff's individual claim is granted, and the representative component of Plaintiff's PAGA claim and the instant proceedings are stayed pending the resolution of the arbitration. 9 U.S.C. § 3.

### C. Motion for Judgment on the Pleadings

Since the Court has granted the motion to compel arbitration, the Court denies the pending motion for judgment on the pleadings without prejudice. The Court finds that the sufficiency of the pleadings is best resolved during the forthcoming arbitration proceedings, so Defendant is permitted to refile a Rule 12(c) motion before the arbitrator.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand (Dkt. No. 18) is DENIED and Defendant's motion to compel arbitration (Dkt. No. 34) is GRANTED. The Court STAYS the proceedings in the instant case pending resolution of the arbitration, as required by 9 U.S.C. § 3. The parties shall provide a joint status report every **180 days** from the date of this order, or within **30 days** of the completion of the arbitration, whichever is sooner.

Finally, the Court DENIES Defendant's motion for judgment on the pleadings (Dkt. No. 31) without prejudice.

IT IS SO ORDERED.

Dated: September 25, 2024

_____
KANDIS A. WESTMORE
United States Magistrate Judge

13